| | | |
|---|---|---|
| **EVERETT LEE ANDREWS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 7] and the Defendant's Motion for Summary Judgment. [Doc. 10].

## I.    BACKGROUND

Plaintiff claims mental health impairments as a result of his combat experiences while serving with the U.S. Army in Afghanistan from January 2003, until June 2004. [Doc. 6-21 at 2 to 5 (Transcript ("T.") at 1289 to 1292)]. On August 14, 2013, the Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging an onset date of July 26, 2013. [Doc. 6-3 at 12 (T. at 11)]. The Plaintiff's claim was denied initially and on reconsideration by the state agency. [Doc. 6-4 at 15; 32 (T. at 79;

96)].  Upon the Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on August 25, 2014.  [Doc. 6-3 at 34 to 66 (T. at 33 to 65)].  The Plaintiff appeared with counsel before the ALJ in Charlotte, North Carolina.  Also appearing was Selena Earl, the Vocational Expert ("VE").  [Id.].  On January 7, 2015, the ALJ issued a written decision denying the Plaintiff benefits.  [Id. at 12 to 26 (T. at 11 to 25)].  The Appeals Council denied the Plaintiff's request for review on April 20, 2015, thereby making the ALJ's decision the final decision of the Commissioner.  [Id. at 2 to 4 (T. at 1 to 3)].  The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird

2

v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted). "In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III.    THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2012). The claimant "bears the burden of proving that he is disabled within the meaning of the Social Security Act." English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993). In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

At the first step, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. 20 C.F.R. §§ 404.1520, 416.920. If not, the case progresses to the second step where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies or a combination thereof which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id. Third, if a severe impairment is shown and meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. § 404, Appendix 1 to Subpart P, the claimant is automatically deemed disabled regardless of

age, education or work experience.  Id.  Fourth, if the severe impairment does not meet any of the Listings, then the ALJ determines the claimant's residual functional capacity ("RFC") and reviews the physical and mental demands of work done in the past.  If the claimant can still perform his/her prior work despite the severe impairment, then a finding of not disabled is mandated.  Id.  If the claimant has a severe impairment but cannot perform past relevant work, then the case progresses to the fifth step where the burden shifts to the Commissioner.

At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work that exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006) (noting Commissioner bears evidentiary burden at step five). The Commissioner may meet this burden by relying on the Medical–Vocational Guidelines ("Grids") found at 20 C.F.R. § 404, Appendix 2 to Subpart P, if applicable, or by calling a VE to testify. 20 C.F.R. § 404.1566. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled. Otherwise, the claimant is entitled to benefits.  In this case, the ALJ rendered a determination adverse to the Plaintiff at the fifth step.

## IV. THE ALJ'S DECISION

At steps one and two, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date and that he suffers from major depressive disorder, post-traumatic stress disorder, panic disorder with agoraphobia, and alcohol abuse. [Doc. 6-3 at 14 (T. at 13)]. The ALJ further found Plaintiff's "associated symptoms include flashbacks, social isolation, irritability, rage, sweating, shortness of breath, feelings of guilt, suicidal ideation, decreased appetite, difficulty remembering things, etc." [Id.]. At step three, the ALJ found that Plaintiff's impairments did not meet or equal one of the Listings. [Id. at 15 to 17 (T. at 14 to 16)].

At step four, the ALJ made her determination with regard to the Plaintiff's RFC and concluded that:

> the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except: he is limited to simple, routine, repetitive tasks; he can have occasional contact with coworkers, supervisors, and the general public; he cannot perform jobs that require adherence to strict production quotas or working at an assembly line pace.

[Id. at 17 (T. at 16)]. As noted, the ALJ's medium work RFC determination was restricted. She concluded Plaintiff could not perform the full range of medium work, in part, because he could not meet firm production quotas or a normal assembly line pace. The ALJ identified Plaintiff's past work as including: (1) a truck driver, which was medium in exertion and semiskilled;

6

(2) a corrections officer, which was medium in exertion and semiskilled; (3) a pest control worker, which was light in exertion and skilled; (4) a route sales driver, which was medium in exertion and semiskilled; (5) a production assembler, which was light in exertion and unskilled; and (6) a department manager, which was medium in exertion and skilled. [Id. at 19 (T. at 18)]. The ALJ observed, however, that Plaintiff's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." [Id. at 20 (T. at 19)]. Accordingly, the ALJ concluded that Plaintiff could not perform past relevant work. [Id.].

With the Plaintiff having carried his burden through the first four steps, the ALJ then assessed whether, at step five, the Commissioner could meet her burden of showing the availability of jobs the Plaintiff is able to do, given his RFC.[1] [Id.]. Based upon the testimony of the VE, the ALJ concluded that, considering the Plaintiff's age, education, work experience, and RFC, there

_____

[1] As noted in the Court's discussion of the sequential evaluation process, supra, the Commissioner at step five has two options available to determine whether a claimant is disabled, one of which is the use of the Grids. In this matter, the ALJ determined Plaintiff's RFC did not encompass the *full range* of medium work. If a claimant cannot perform the full range of work at an exertional level, the Grids are inapplicable. "The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments." 20 C.F.R. § 404, Appendix 2 to Subpart P, section 200.00(e)(1). Accordingly, the ALJ below concluded that a Grid Rule 203.07 determination was inapplicable to Plaintiff due to his nonexertional impairments. Unlike Plaintiff, any claimant who does meet a specific vocational profile under the Grids (i.e., can perform the full range of work at an exertional level), can either be found not disabled or disabled (loosely known as "gridding out") depending upon the criteria of the applicable Grid Rule.

were other jobs existing in the national economy that he was able to perform. [Id.]. The ALJ therefore concluded that the Plaintiff was "not disabled" and denied benefits. [Id.].

## V.  DISCUSSION

The Plaintiff presents two arguments as to why the decision of the ALJ should be reversed. First, Plaintiff asserts that the ALJ erred by failing to consider the mental health information contained in his medical record that predated his alleged onset date of disability, July 26, 2013.  [Doc. 7-1 at 4]. Second, Plaintiff contends the ALJ erred in assigning "little weight" to the VA's decision rating him 100% disabled due to his severe mental health impairments.  [Id.].  The Plaintiff argues that these errors render the ALJ's RFC determination infirm, and any opinions based thereon given by the VE are thus likewise flawed, and thus the ALJ's decision based on that VE testimony must, therefore, be reversed. [Id. at 11].

### A.    Failure to Consider All the Evidence.

Residual Functional Capacity is an administrative assessment of "the most" a claimant can still do despite his or her physical or mental limitations. SSR 96-8p, 61 Fed. Reg. 34,474, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. §§ 404.1546(c); 404.943(c). In assessing a claimant's RFC, the ALJ must evaluate all of the claimant's medically determinable impairments, including

non-severe impairments and symptoms, after considering "***all the relevant evidence in [the] case record***." 20 C.F.R. § 404.1545(a) (emphasis added).

In this matter, the ALJ failed to consider all relevant evidence in the record in making an RFC determination. Particularly, the ALJ failed to address two significant aspects of Plaintiff's severe mental health impairments. First, the ALJ did not discuss Plaintiff's PTSD signs and symptoms. Second, the ALJ failed to account for the "longitudinal evidence" of the Plaintiff's mental health.

The Plaintiff presented extensive evidence detailing his mental health issues over the several years preceding his disability onset date, including the VA's voluminous treatment notes, psychological test results, professional opinions, and other records. In denying the Plaintiff's claim, however, the ALJ did not discuss this body of evidence,[2] but rather gave "significant

_____

[2] The ALJ's written decision regarding Plaintiff's RFC cites to three VA counseling session entries, but only to describe Plaintiff's physical appearance and affect and without mentioning the clinicians' notes regarding Plaintiff's PTSD signs and symptoms. [Doc. 6-3 at 18 (T. at 17)]. The only arguably relevant VA record entry cited by the ALJ is her reference to the Plaintiff's May 20, 2013, VA therapy session when he remarked that he was "doing ok." [Doc. 6-18 at 74 (T. at 1013)]. From this isolated, ambiguous description, the ALJ mischaracterizes the entirety of the contents of Plaintiff's VA "treatment notes" by broadly opining that Plaintiff's PTSD signs and symptoms are benign because he has had no recent hospitalizations and the "treatment notes which are available in the record suggest that he was 'doing ok' when he engaged in group (and individual) therapy at the VA." [Doc. 6-3 at 18 (T. at 17)]. The vast majority of the VA file contradicts this finding. As such, this focus on these minute portions of the VA file manifest that the bulk of this evidence was not considered at all.

9

weight" to the opinions of the State agency medical and psychological consultants who neither saw nor examined the Plaintiff. [Doc. 6-3 at 18 (T. at 17)]. The ALJ made this assessment without explaining her basis for doing so, in plain violation of 20 C.F.R. § 404.1527(c).

The Plaintiff's VA records are a compilation of evidence from his "treating sources" and, as such, are to be given greater weight – in appropriate circumstances even "controlling weight" – versus the weight to be given to non-treating sources like the consultants relied upon by the ALJ. 20 C.F.R. § 404.1527(c)(2). The Plaintiff's VA records document the Plaintiff's mental health deterioration beginning with his initial PTSD screening in 2010, followed by the VA's later determination that the Plaintiff was 30% disabled due this condition, and ultimately leading to the VA's conclusion that Plaintiff's PTSD was 100% disabling. [Doc. 6-21 at 2 (T. at 1289)]. The ALJ, however, failed to acknowledge or discuss the significant medical opinions provided by several clinicians and contained within the Plaintiff's VA file. "In determining whether you are disabled, **_we will always consider the medical opinions in your case record_** together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b) (emphasis added). The ALJ, however, failed to acknowledge (much less consider) the following:

July 19, 2010, Mental Health Intake Assessment opinion by counselor Billy Moore [Doc. 6-20 at 86 to 95 (T. at 1216 to 1225)] and counseling treatment records [Id. at 97 to 131 (T. at 1227 to 1261)];

September 14, 2010, Initial PTSD Diagnosis opinion by neurologist William Bodner, M.D. [Doc. 6-9 at 49 to 51 (T. at 347 to 349)];

December 29, 2010, narrative report of PTSD history, symptoms, and opinion by psychologist Marvin Poston, Psy.D. [Doc. 6-8 at 2 to 3 (T. at 298 to 299)];

July 11, 2011, Compensation and Pension Examination opinion of PTSD by psychologist Ryan DeHaas, Ph.D. [Doc. 6-9 at 93 to 106 (T. at 391 to 404)];

January 9, 2012, Independent Consultative Psychiatric Examination opinion by psychiatrist Warren J. Steinmuller, M.D. [Doc. 6-10 at 26 to 30 (T. at 429 to 433)];

February 21, 2012 - May 20, 2013, mental health notes and opinions by psychiatrist Dorota Gawlas, M.D. [Docs. 6-11 63 to 67; 6-13 at 71 to 76; 6-16 at 87 to 91; 6-16 at 72 to 74; 6-18 at 82 to 86; and 6-18 at 74 (T. at 528 to 532; 661 to 666; 875 to 879; 860 to 862; 1021 to 1025; and 1013)];

March 14, 2012, Compensation and Pension Examination opinion for mental disorders by psychiatrist Kenneth Detrick, M.D. [Doc. 6-13 at 27 to 35 (T. at 617 to 625).

The ALJ not only failed to consider "all of the evidence" in this matter, but she also failed to consider what would appear to be very significant evidence in this matter – the opinions and supporting documentation of Plaintiff's treating sources contained in his VA file directly relevant to the issue of Plaintiff's mental health. The opinions omitted by the ALJ support

the Plaintiff's contention that he is eligible for disability benefits. Since those opinions are contrary to the ALJ's determination, she was required to explain why her RFC assessment differed from them. The ALJ, however, failed to do so. "The RFC assessment must always **consider and address** medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, <u>Medical Opinions</u>, 61 Fed. Reg. 34,474, 1996 WL 374184 (July 2, 1996) (emphasis added).[3] As a result of this failure to consider all of the evidence, the ALJ arrived upon an RFC that contradicts some of the most significant evidence on the point, without ever explaining the contradiction. The failure to consider this significant evidence requires remand.

The ALJ's second evidentiary error was her failure to scrutinize the "longitudinal evidence" of Plaintiff's mental health. The ALJ simply concluded that the Plaintiff's severe mental health impairments were not disabling because "the claimant continued to work at substantial gainful activity levels through July 2013." [Doc. 6-3 at 18 (T. at 17)]. Since the Plaintiff's claim is based entirely on his severe mental health impairments, the Social Security

---

[3] Ironically, the Commissioner acknowledges that the opinions held by the VA clinicians must be considered as expert opinion evidence. [Doc. 11 at 7 (citing SSR 96-5p and SSR 06-03p)].

Rules and Regulations require a much more in-depth review and analysis of his past mental health history. The ALJ must conduct an exacting review of a claimant's mental health record and thereafter provide specific findings. SSR 96-8p. The Regulations make plain that "[p]articular problems are often involved in evaluating mental impairments in individuals who have long histories of … prolonged outpatient care with supportive therapy and medication." 20 C.F.R. § 404, Appendix 1 to Subpart P, § 12.00(E). The Regulations, therefore, set forth a mechanism for this type of review and documentation, known as the "special technique," to assist ALJs in assessing a claimant's mental RFC.

In determining any RFC, an ALJ must first identify the claimant's functional limitations or restrictions and then assess the claimant's work-related abilities on a ***function-by-function basis***. SSR 96-8p (emphasis added); <u>see</u> <u>also</u>, <u>Mascio v. Colvin</u>, 780 F.3d 632, 636 (4th Cir. 2015) (remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citing with approval <u>Cichocki v. Astrue</u>, 729 F.3d 172, 177 (2d Cir. 2013)). With regard to mental health issues, "[t]he determination of mental RFC is crucial to the evaluation of your capacity to do [substantial

gainful activity] when your impairment(s) does not meet or equal the criteria of the listings, but is nevertheless severe." 20 C.F.R. § 404, Appendix 1 to Subpart P, § 12.00(A).[4] Therefore, the determination of mental RFC, as noted above, is accomplished through the use of the aforementioned "special technique."

> Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s). … If we determine you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our finding[.]

20 C.F.R. § 404.1520a(b). For this reason, Rule 96-8p explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). … Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id. A patient's level of functioning may vary considerably over time. The level of functioning at a specific time may seem relatively adequate, under the prevailing circumstances, and at other times

---

[4] As noted supra, the ALJ concluded that Plaintiff's impairments did not meet or equal a Listing at Step Three of the sequential process.

may seem much less so.  The Plaintiff's mental health profile clearly fits this description.   "Thus, it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication to establish [a mental] impairment severity." 20 C.F.R. § 404, Appendix 1 to Subpart P, § 12.00(D)(2).   In other words, the ALJ must consider the "longitudinal evidence" of mental impairments in arriving upon the RFC.

The ALJ failed to conduct any function-by-function analysis over an extended period of time as prescribed by the Rule and Regulations. Accordingly, her written decision omitted any demonstrated use of the special technique to determine Plaintiff's mental RFC at Steps Four and Five.[5]  In her RFC recitation of facts, the ALJ cited only to the most recent

---

[5] Despite the absence of any longitudinal function-by-function analysis which the ALJ was required to perform, the ALJ's written decision contains a paragraph implying she had conducted such an analysis:

> The limitations identified in the "paragraph B" criteria [of the Listings] are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p).  Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

[Doc. 6-3 at 16-17 (T. at 15-16) (emphasis added)]. However, no "paragraph B" analysis followed this paragraph. There was no detailed assessment (in narrative form or otherwise) describing how the evidence supports each conclusion.

information concerning the Plaintiff. This information fell within a one-year period from approximately Plaintiff's alleged onset date to the date of Plaintiff's disability hearing. [Doc. 6-3 at 18-19 (T. at 17-18)]. Consequently, the ALJ's written decision referenced the Plaintiff's hearing testimony, the written submissions by Plaintiff's friend, Katina Phillips (whose opinion the ALJ gave "little weight"), a few of Plaintiff's recent medical records, and the opinion of consultative psychologist, Robert Abramowitz, who examined Plaintiff within the year before the hearing. [Id.]. This abbreviated examination of Plaintiff's mental health does not meet the requirement that the ALJ consider evidence involving the repeated observations of the Plaintiff's cognitive, emotional, and rational functioning over a long period of time. As such, the ALJ committed legal error in failing to scrutinize the "longitudinal evidence" pertaining to Plaintiff's mental health records dating back over several years. For this reason, the decision of the ALJ must be reversed and the matter must be remanded for further proceedings.

## B. Weight of the VA Disability Determination.

The Court now turns to the Plaintiff's argument that the ALJ erred in assigning "little weight" to the VA's 100% disability rating of him. On July 18, 2013, the VA determined that Plaintiff was 100% disabled beginning April 4, 2011, as a result of his PTSD. [Doc. 6-21 at 2 to 8 (T. at 1289 to 1295)]. In

her RFC determination, the ALJ gave "little weight to the various VA disability ratings interspersed throughout the record." [Doc. 6-3 at 19 (T. at 18)]. The ALJ stated, as her basis therefor, that "[w]hile these ratings have been considered, the ultimate issue of disability is reserved for the Commissioner in this case." [Id. (citation omitted)]. Plaintiff argues that the ALJ's attribution of "little weight" to the VA's disability rating was reversible error, citing for support the Fourth Circuit's decision in Bird, 699 F.3d at 343. [Doc. 7-1 at 4].

The Plaintiff's argument has merit. The question of who adjudicates a claim is wholly unrelated to the issue of whether such claim is supported by competent and adequate evidence. By supporting her decision in such a manner, however, the ALJ has impermissibly conflated her *authority* to make a disability determination with the proper legal *standard* for making the determination. The proper legal standard that the ALJ is required to follow is set out in Bird.

In Bird, the claimant was a veteran who, like Plaintiff, suffered from PTSD as a result of his combat experience. Id., 699 F.3d at 339. Also like Plaintiff, Mr. Bird changed jobs somewhat frequently because he had experienced difficulty interacting with people. Mr. Bird alleged his disabling PTSD began January 1, 2001, the date his last job ended. Mr. Bird did not have any medical records dating before March 31, 2005. He applied for VA

benefits on June 9, 2006, and after several examinations, was ultimately awarded a 100% disability rating from the VA thereafter, nunc pro tunc, as to his application date. Id. Mr. Bird's VA file documented his various symptoms including nightmares, flashbacks, isolation, withdrawal, intrusive memories, difficulty feeling close to his wife and other members of his family, a long history of anger management problems, and his statement that he "quit going around people" in 2001. Id.

With regard to his Social Security benefits claim, Mr. Bird first applied for disability benefits with the SSA on December 19, 2006, and his claim was denied both initially and upon reconsideration. 699 F.3d at 340. Mr. Bird then sought further review before an ALJ who found that, although Mr. Bird suffered from PTSD, his impairment was not sufficiently severe to qualify him for receipt of SSA disability benefits. In reaching this conclusion, the ALJ did not accept the VA rating decision because it became effective after the date Mr. Bird was last insured to receive SSA benefits. Mr. Bird then brought suit in federal district court where the denial of benefits was upheld. On appeal to the Fourth Circuit, Mr. Bird asserted as one argument that the ALJ erred in failing to accord any weight to his disability determination made by the VA. The appellate court agreed and held that the finder of fact must give substantial weight to a VA disability rating. Id., 699 F.3d at 343. The court

cautioned, however, that because the standards for evaluating a claimant's alleged disability differ between the VA and SSA, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly explains how the circumstances are different between the two.  Id.

In the present matter, the ALJ gave "little weight" to the Plaintiff's 100% disability rating by the VA, stating that the Plaintiff's "treatment notes, to which the undersigned has given significant weight, do not support a finding of disability."  [Doc. 6-3 at 19 (T. at 18)]. The ALJ, however, set forth no analysis to support this conclusory "finding."  "The ALJ's RFC assessment must always consider medical source opinions, and if the RFC assessment conflicts with such an opinion, the ALJ *must explain why the opinion was not adopted*." SSR 96-8p, 61 Fed. Reg. 34,474, 1996 WL 374184 (July 2, 1996) (emphasis added).  The Commissioner asserts that the opinions of the VA clinicians are given "little weight" because "the sources making said opinions did not have an opportunity to review Plaintiff's recent medical records." [Doc. 6-3 at 19 (T. at 18).   According to the Commissioner:

> In Bird, the evidence was only possibly relevant … because there was evidence that it could relate back to the period under review. In this case, however, the evidence would have to show that the condition during the VA opinion period must persist into the

current period[.] As the VA opinion was based on medical records prior to the VA opinion, it has little probative value where there is <u>new evidence</u> during the relevant period about a claimant's condition. That is the case here, and that is the big difference between a VA determination after a period and one before. A prior opinion cannot relate forward if there is <u>new evidence</u> that contradicts the opinion because the old opinion did not consider that change in evidence.

[Doc. 11 at 7-8 (emphasis added)]. However, there is no new opinion evidence in the record. The Commissioner has cited to no evidence that indicates the Plaintiff is cured or that the signs, symptoms, and diagnoses of his severe mental impairments have changed. On the contrary, all of the record evidence shows the opposite to be true, that Plaintiff still suffers from debilitating PTSD. In fact, the most recent opinion evidence, provided by consultative psychologist Robert Abramowitz, is fully consistent with the opinions found in the Plaintiff's VA file, most notably the VA's 100% disability rating decision. <u>Cf</u>. Dr. Abramowitz's "Mental Status" opinion [Doc. 6-19 at 35, ¶1 (T. at 1063)] <u>with</u> VA Disability Decision's "Reason for Decision" opinion [Doc. 6-21 at 4-5, ¶3 (T. at 1291-92)].

The ALJ was required to undertake a comprehensive evaluation of the Plaintiff's medical condition as mandated by the applicable legal standards. That is what the VA did, but what the ALJ failed to do. As the Fourth Circuit observed, "[b]ecause the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies

20

is highly relevant to the disability determination of the other agency." <u>Bird</u>, 699 F.3d at 343. The ALJ's unsupported "finding" attributing little weight to the Plaintiff's 100% disability rating by the VA was thus legal error. For this reason, the decision of the ALJ must be reversed.

## VI. CONCLUSION

The ALJ failed to consider "all of the evidence" in this matter as required by 20 C.F.R. § 404.1545(a). Accordingly, the Court concludes that the ALJ's RFC determination is unsupported and this matter must be remanded to enable the ALJ to conduct a thorough review of all of the evidence pertaining to the Plaintiff's severe mental health impairments.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 7] is **GRANTED**, and that the Defendant's Motion for Summary Judgment [Doc. 10] is **DENIED**. Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and this case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: August 31, 2016

Martin Reidinger
United States District Judge